RUTH G. EARLE, OWNER, PLAINTIFF IN ERROR, v. S. A. WILLETS & COMPANY, DEFENDANT IN ERROR.

A filed contract, although signed by a person other than the owner, in the absence of fraud, will, under section 2 of the Mechanics' Lien act, protect the land and building of the owner of the land from all claims except those of the contractor.

On error to the Supreme Court.   For opinion of Supreme Court, see 24 *Vroom* 270.

Argued at November Term, 1893.

For the plaintiff in error, *August Stephany.*

For the defendant in error, *John W. Wescott.*

The opinion of the court was delivered by

REED, J.   This writ brings up a judgment of the Circuit Court, entered in conformity with an advisory opinion of the Supreme Court.   The opinion is sent up in conformity with section 249 of the Practice act, and error is assigned upon the first resolution contained in that opinion.

The question involved arises in this way : Mrs. Earle, the plaintiff in error, was made defendant, as owner, in an action upon a mechanics' lien brought by Willets & Company. Willets & Company had furnished material for the erection of a building upon the land of Mrs. Earle.   Her defence, as owner, was, that the building was erected in pursuance of a contract made by Harry Earle, the husband of Ruth G. Earle, with one Bowker, as contractor.   This contract was duly filed before the work upon the building began.

It was ruled that this contract did not protect the estate of Mrs. Earle in the land and building from the claim of Willets & Company.   This conclusion was put upon the ground that the contract was signed by a person other than the owner of the land upon which the building was to be placed.

It did not appear that there existed any fraudulent intention to cheat workmen or materialmen by this manner of executing the contract. Nothing appeared in the case to bring it within the influence of the doctrine announced by the Supreme Court in the case of *Young* v. *Wilson*, 15 *Vroom* 157.

The decision was the result of an interpretation of the terms of the act, and it was concluded that the legislature, when it used the word " contract," in the second section of the Mechanics' Lien act, meant only a contract made by and in the name of the owner of the estate upon which the lien could be filed.

The issue here presents the correctness of this construction of the statute.

The language of the second section of the act (*Rev., p.* 668) is as follows : " That when any building shall be erected in whole or in part by contract in writing, such building and the land whereon it stands shall be liable to the contractor alone for work done or materials furnished in pursuance of such contract." Then follows a provision requiring the contract, or a duplicate, to be filed before the work is done or the materials are furnished.

It is perceived, by a comparison of the facts appearing in this case with the express words of the above section, that Willets & Company are excluded from occupying a position as lienors against the property of Mrs. Earle. The facts exactly fit the statutory conditions, for it is undenied that this part of their claim is for materials furnished in pursuance of a contract in writing, duly filed, before the said materials were furnished.

A primary rule of statutory construction is to follow the natural and literal meaning of the language used by the legislator : " When an act is conceived in clear and precise terms— when the sense is manifest and leads to nothing absurd—there can be no reason to refuse the sense which this treaty naturally presents. To go elsewhere in search of conjectures, in

order to restrain or extinguish it, is to endeavor to elude it." *Vattel's First Maxim, Dwar. Stat.* 126.

The rule is entirely settled in this state, that unless a clear intent, differing from the literal meaning of the words used, is to be found in the context or in acts *in pari materia,* the only duty of the court is to construe the language naturally and literally. *Rudderow* v. *State, West Jersey Ferry Co., pros.,* 2 *Vroom* 512; *Douglass* v. *Chosen Freeholders of Essex,* 9 *Vroom* 214; *Water Commissioners* v. *Brewster,* 13 *Vroom* 125.

The Supreme Court's interpretation of this statute resulted in the interpolation into section 2, after the words " contracts in writing," of the words " signed by the owner."

The inference that the legislature meant to restrict the contracts mentioned to such contracts only as were made by the owner, was drawn from the requirement of the section that the contract should be filed.

" The manifest object of this proviso," it was justly said, " is to notify all persons other than the original contractor, who may be about to furnish material or labor for the construction of the building, that they cannot rely upon a lien for their payment." It was said with equal truth, that there must be some means by which the parties to be notified can discover that such an instrument has been filed; that the statute expressly provides no means, and that none can be suggested, which does not involve the ascertainment of some fact *in pais.*

It was thought that the legislature must have had some such fact in mind, and that the fact most reasonably suggested is the name of the owner about to erect the building. For this reason it was concluded that it was only such contracts as contained this fact, namely, the name of the owner, that the legislature intended the act to include.

I am unable to regard this inference of intention as possessing such a degree of clearness as to justify this qualification of the express words of the section.

In requiring the filing of the contract, there was undoubt-

edly an intention that such filing should operate as a notice; but that there was in the minds of the legislature any particular fact which should exist to supply a clue to the filed instrument, is not probable.   So long as there exist clues other than the name of the owner, it cannot be said that the filing of any contract does not subserve the purpose of the act.

Now, in respect of the means by which the existence of a contract can be discovered, it may be again observed that, whether a filed contract is signed by the owner or not, inquiry into matters aside from the record is essential to a successful inquiry in respect to its existence.   If the name of the owner is to be the starting point, an ascertainment of his name, which inquiry also involves the establishment of the identity of the property, is necessary.   The record of conveyances cannot be relied on to furnish such information, for the owner's deed may not be recorded.   Possession cannot be depended on, for there may be, and often is, no visible possession of the land upon which the building is to be erected, or it may be in the possession of a tenant or stranger.

In most instances, the name of the contractor is as readily discoverable as is that of the owner.   The laborer or materialman knows upon whose orders he is called upon to work or furnish materials.   The laborer knows, and the materialman should know, the premises to be improved.

I cannot conceive an instance where diligent inquiry will not disclose whether the person to whom service is rendered is the owner, contractor, sub-contractor, or an agent of either of these.   Inquiry of the owner would also disclose the fact whether the work was being done by him or not, and if by him, whether by contract or not, and if by contract, who is the contractor.

Unless such inquiries as can be made are answered by such a series of falsehoods as would brand the whole transaction as fraudulent and void, I see no difficulty in ascertaining the existence of a contract, whether it is signed in the name of the owner or in the name of a third person.

It cannot be said, therefore, that the name of the owner is

the only clue, but only that it may be a better clue than some other fact—that it may make the existence of a contract in some degree more readily discoverable. But I do not regard this position, even if entirely accurate, as a reason sufficient to support the judicial interpolation into the second section of the statute, made by the Supreme Court.

Again, the fourth section of the act seems to discountenance the notion that the legislature meant that the name of the owner should appear on the contract as the fact from which its existence can be discovered.

This section provides that if any building be erected by a tenant or other person than the owner of the land, then only the building and the estate of such tenant or other person so erecting such building shall be subject to the lien created by this act, unless such building be erected by consent of the owner of such land in writing.

The provision of section 2 in respect of the effect of filing a written contract applies to all cases of labor or material furnished in the erection of a building. No one can successfully contend that it does not apply to the erection of a building by a person other than the owner, as well as to buildings erected by the owner. It cannot be questioned that a building erected by a tenant or other person under a duly-filed contract would not be entirely efficacious to protect the building from the claims of all persons other than the contractor.

Yet it is obvious that a contract, when the building is so erected, must be signed by a person other than the owner of the land.

The language of section 4 is entirely repugnant to the notion that an unassenting landowner has any connection whatever with a contract entered into for the erection of a building upon his land by his tenant or any other person.

Such a contract must be made by a person other than the owner, else it would be the contract of the owner, and not of his tenant or other person, It seems, therefore, obvious that the contracts mentioned in section 2 were not confined to such

contracts only as were executed in the name of the owner of the land.

Therefore it is necessary, for the purpose of supporting the conclusion arrived at by the Supreme Court, to hold that the inference is that the legislature designed that some, and not all, contracts must be in the name of the owner of the land.

This inference seems highly improbable. Nor is this improbability diminished by the suggestion that the owner who is to sign is the owner of the estate which may be burdened by the lien; that the owner of the fee is to sign if he erects the building, and the tenant or other person is to sign if either of them makes the improvement.

The moment it is admitted that an effective contract can be made by a person other than the owner of the land, whether that person is in possession or not, whether his interest in the land is a matter of record or not, the value of the owner's name as a clue to the existence of a filed contract possesses so little importance that it seems entirely insufficient to import into the statute the ascribed intention.

The judgment of the Supreme Court is reversed.

*For affirmance*—THE CHANCELLOR, VAN SYCKEL.	2.

*For reversal*—ABBETT, DEPUE, LIPPINCOTT, REED, BOGERT, BROWN, KRUEGER, PHELPS, SMITH.	9.