White *v.* White.

---

Patrick White et al.

*v.*

John P. White et al.

[Filed December 18th, 1900.]

1. An appeal from a final decree in a cause respecting lands and real estate, of the pendency of which notice has been duly filed, pursuant to the provisions of section 57 of the Chancery act, is required, by the provisions of section 114 of the same act, to be taken within three months

from the filing of such decree, whether such decree be in favor of the complainant or of the defendant.

2. While notice, under section 57, is ineffectual before bill filed and subpœna served, it may be thereafter filed at any time before final decree, and the time for appeal will be thereby abridged.

On motion to dismiss appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *15 Dick. Ch. Rep. 104.*

*Mr. Alan H. Strong,* for the motion.

*Mr. Willard P. Voorhees, contra.*

The opinion of the court was delivered by

MAGIE, CHANCELLOR.

The appeal in this cause was taken from a final decree made upon a bill for relief respecting lands and real estate. In order that the filing of the bill and the proceedings thereunder, before final decree, should become constructive notice to purchasers or mortgagees of the land, the complainant was required to file in the county clerk's office a notice of the pendency of the suit by the provisions of section 57 of the Chancery act of 1875, as amended in 1888. *Gen. Stat. p. 402.*

By a stipulation of counsel it is admitted that the bill was filed July 17th, 1899; that defendants filed answer September 6th, 1899; that the cause was heard before a vice-chancellor February 17th, 1900; that he advised a final decree in favor of complainant, setting aside a deed, which decree was made February 26th, 1900, and filed the next day; that a notice of *lis pendens* was duly filed February 14th, 1900, and that the appeal was taken by the defendants October 9th, 1900.

A motion to dismiss the appeal is now made on the ground that it was taken too late. This objection is based upon the provisions of section 114 of the Chancery act (*Gen. Stat. p. 394*), which, after a general limitation of appeals from final decree to a period of three years after the decree is made, adds the following:

White *v.* White.

"Unless a notice of *lis pendens* has, in the manner hereinbefore provided for, been filed in the county clerk's office, in which cases all appeals from final decrees shall be made within three months after filing the decree appealed from."

It has always been conceded that the provisions of section 57 of the Chancery act, as to all cases within it, restricted the effect of the doctrine of *lis pendens* theretofore applicable. *Haughwout* v. *Murphy, 7 C. E. Gr. 531; Turner* v. *Houpt, 8 Dick. Ch. Rep. 526.*

The language of the clause above quoted from section 114 of the Chancery act applies to the appeal before us, for it was not taken within three months from the filing of the final decree appealed from.

It is not contended that the legislature may not fix a period of limitation within which a review of a judicial determination must be sought in this court. The contention is that, in the statute before us, the words used to express the limitation in this class of causes are not to be interpreted in their plain and obvious meaning, but that a meaning is to be attributed to them restricting their operation to a portion of the class.

The rule applicable to the construction of statutes in this respect was laid down in this court by Mr. Justice Elmer thus: "No principle is better settled or more important to be faithfully adhered to by courts called upon to enforce written statutes than that, in the absence of ambiguity in the language used, no exposition shall be made which is in opposition to the express words, or, as the maxim is sometimes expressed, it is not allowed to interpret what has no need of interpretation." The learned justice then proceeded to quote, with approbation, the statement of the rule by Mr. Justice Washington, in *United States* v. *Fisher, 2 Cranch 399,* to this effect: "When a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. But if, from a view of the whole law, or from other laws *in pari materia,* the evident intention is different from the literal import of the terms employed to express it in a particular part of the law, that intention should prevail, for

that, in fact, is the will of the legislature." *Rudderow* v. *State,*
*2 Vr. 512.*

In the same line Chief-Justice Beasley declared that where
the letter of the law is absolutely unambiguous and definite and
is susceptible of but a single meaning, the clause under construc-
tion must be read in such sense, no matter to what futility it
may lead. *Van Riper* v. *Parsons, 11 Vr. 1.*

These doctrines have been repeatedly announced by our courts.
*Douglass* v. *Chosen Freeholders, 9 Vr. 214; State* v. *Parker, Re-
ceiver, 6 Vr. 576; Water Commissioners* v. *Brewster, 13 Vr.
125; Koch* v. *Vanderhoof, 20 Vr. 619.*

My examination of the act in which the words to be construed
are included, and my consideration of the general doctrine of
*lis pendens* which was affected thereby, and of every act *in pari
materia* (if any can be thus justly characterized), has failed to
disclose any indication that, when the legislature enacted that
*all* appeals in certain definitely described cases shall be made
within three months, they evidently intended that certain ap-
peals in such cases should not be so limited. Failing to discover
such evident intention, it is the duty of the court, in my judg-
ment, to construe the words in their plain, obvious and unre-
stricted sense. It is not within the province of the courts to
construe the language of legislative acts by an inquiry into what
the legislature ought to have intended thereby. Their duty is
restricted to the question what the legislature did intend thereby,
as discovered from its acts. To step beyond this restriction is
judicial legislation and not judicial construction.

The argument in opposition to this view essays to discover
in this legislation indications that the legislature, though using
language which was general, really intended it to be special and
restricted. These indications are supposed to be found, *first,*
from the provisions of section 57, which are assumed to enable
a complainant in such cases to burden the lands in dispute with
a sort of lien for his claim, and *second,* from the fact that when
a defendant in such a cause has succeeded in obtaining a decree
in his favor, it is to his interest that an appeal questioning such
decree should be speedily disposed of.

This argument ignores the real significance of the provisions

White *v.* White.

of section 57. But for the enactment of those provisions, the mere filing of a bill of the sort in question would have created the like burden upon the lands in respect to which relief was sought. The effect of those provisions is to relieve the lands from such burden, before final decree, unless the complainant should give the prescribed notice. The appropriateness of a short limitation, upon proceedings to review such decrees, was in no sense created or increased by the provisions of section 57. Besides, the enactment leaves such lands to the former rule after final decree.

In the second place, it is plainly erroneous to assume that the inconvenience and injustice which would result from a long period of limitation of appeals in cases of this sort to the defendant who has obtained a decree in his favor, must have been the sole motive for the legislation which abridged the period of limitation. I have no doubt that such inconvenience and injustice did furnish a motive for such legislation. But it is obvious that a long period of limitation may well have been considered to operate unjustly in cases in which the complainant was the successful party. I can best illustrate my meaning by a supposed case. If A, who has a contract with B, whereby B agrees to convey lands to him, has filed a bill for specific performance of the contract and obtained a decree in his favor, a long period during which B may appeal from such decree, may be well conceived to operate unjustly toward A. It is true that if B refuses to comply with the decree, it will operate as a conveyance under the provisions of section 63 of the Chancery act. *Gen. Stat. p. 383.* But notwithstanding the decree has such operation, it is obvious that prudent purchasers or mortgagees will be unwilling to deal with A in respect to such lands until the possibility of an appeal or reversal of his decree ceases to exist. The inconvenience and injustice resulting from a long period of limitation to a complainant who has obtained a decree in such cases may well have been within the legislative contemplation. If so, it is not for the court to say that it did not operate to produce an abridged limitation by general words purposely applicable to cure a similar injustice in all cases.

The language of the restriction in question must, therefore,

in my judgment, be construed in its obvious and unrestricted meaning, and therefore to apply to the appeal before us.

It is suggested, rather than argued, that this appeal should not be dismissed, because the notice of *lis pendens* was not filed when the bill was exhibited, but only a short time before the hearing of the cause.

It is settled that notice, under section 57, is ineffectual before bill filed and subpœna served. *Haughwout* v. *Murphy, 6 C. E. Gr. 118; S. C., 7 C. E. Gr. 531.* But nothing in that section requires the notice to be filed within any specified time thereafter, but its effect is limited to proceedings before final decree. Its filing at a late day is not necessarily oppressive, for a defeated party in such a case may always ascertain, by an examination in the clerk's office, whether the period during which he may appeal has been abridged or not.

The motion must prevail.