MARY E. McVOY

*v.*

KARL BAUMANN et al.

[Argued March term, 1922.   Decided June term, 1922.]

1. A contract for the sale and purchase of land, duly recorded in the register's office, operates as constructive notice to all subsequent purchasers of the rights of the respective parties under the contract.

2. Where, on motion to dismiss for want of jurisdiction, the vice-chancellor refused to dismiss, but ordered the defendants to file their answers on the merits, subject to the condition that if on final hearing the motion to dismiss was denied, the answer should stand as a general appearance, and the answers were filed and the defendants actively participated in the trial, the special appearance became a general appearance, and the defendants cannot challenge the jurisdiction of the tribunal whose portals they thus voluntarily entered.

3. A suit for specific performance of a contract to convey land situated within the jurisdiction of the court, the decree in which suit operates to convey the premises regardless of the action of the parties in complying with the decree, is a proceeding *in rem* within the rule that such proceeding may be maintained as to property within the jurisdiction of the court, though the defendants cannot be personally served within the jurisdiction.

4. In such a suit, the burden is upon the defendant claiming as purchaser from the vendor to prove that she was a purchaser without notice of the complainant's rights under the contract, and it is only where the claim of *bona fide* purchase has been sustained by proof that the burden is shifted to the complainant to establish the contrary status.

5. Where a contract for sale of lands required the vendor to convey the lands to the purchaser, his heirs and assigns, the contract can be specifically enforced at the suit of the assignee.

6. When specific performance would be decreed between the original parties to a contract, it will be decreed between all claiming under them if there are no other intervening equities otherwise controlling the case.

7. An action at law to recover damages for a breach of a contract to convey land is not regarded as an adequate remedy justifying refusal of specific performance of the contract under the equitable conception that the purchaser desired the particular land covered by the contract which may have a peculiar and special value for him.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Buchanan, whose opinion is reported in *92 N. J. Eq. 360.*

*Mr. Augustus C. Nash,* for the complainant.

*Mr. Earle A. Merrill,* for the defendants.

The opinion of the court was delivered by

MINTURN, J.

A valid contract, in writing, was entered into by the defendant on July 19th, 1920, with Herbert C. McVoy, the husband of the complainant, to convey to him certain lands in Westfield, the deed to be delivered on October 1st, 1920. Prior to the latter date McVoy, with the consent of Baumann, assigned the contract to the complainant. The original contract of purchase was duly recorded in the register's office of Union county, on

October 4th, 1920, and thereby operated as constructive notice
to all subsequent purchasers of the legal and equitable status
of the parties to the contract, and their respective rights under
it, as trustees and *cestuis que trustent*. *Hoagland* v. *Latou-
rette, 2 N. J. Eq. 254.*

Upon the day fixed for the passing of title, Baumann was
present with a deed duly executed to the complainant, in con-
formity with the terms of the contract; but an arrangement
was then entered into between him and the complainant by
which the delivery of the deed was postponed until the next
day. Upon that day the complainant attended, ready to com-
plete the purchase, but Baumann failed to appear. The com-
plainant, on October 3d, called upon him and tendered the bal-
ance of the purchase-money, according to the contract. Bau-
mann promised to deliver the deed within a few days, but failed
so to do. Instead of complying with his contract, he, on October
26th, conveyed the premises to his wife, and on the 9th of No-
vember, 1920, his wife conveyed the same to the defendant
Cooley. The complainant now seeks by this bill for specific
performance to compel Baumann, his wife and Cooley, to con-
vey the premises to her, in accordance with the terms of the
original contract. No defence upon the merits was interposed,
but the case went to trial upon proof of these facts, and the
learned vice-chancellor advised a decree adjudging, *inter alia,*
that Cooley specifically perform the contract, by executing a
conveyance of the premises to the complainant. The main con-
tention upon which the defence is constructed is that the action
is one *in personam,* and that since the defendants are non-resi-
dents, and were only constructively served with process under
our statute regarding publication against absent defendants, the
court of chancery was without jurisdiction. When this conten-
tion was urged below, the learned vice-chancellor refused to
dismiss the bill, but ordered that the defendants might file
answers, upon the merits "subject to the condition that if on
final hearing the motion to dismiss for want of jurisdiction is
denied, their answer shall stand as a general appearance."
Answers being filed, the case was tried upon the merits, counsel

for the defendants actively participated in the trial, and renewed his motion to dismiss at the close of the case.

We deem it manifest, in this situation, that the special appearance of the defendants was tantamount to a general appearance; and that they cannot now after the doors of equity have been thrown open to them, for the express purpose of enabling them to exploit the merits of the controversy, challenge the jurisdiction of 'the tribunal whose portals they thus voluntarily entered. *Bank of Jasper* v. *First National Bank (April 1st, 1922), 10 U. S. Sup. Ct. Ad. Op. 254.* But aside from that factual consideration, the cause is manifestly not one *in personam,* but is entirely *in rem.* The question thus presented is not *res nova* in this jurisdiction, nor has it been such in the federal courts since the definitive adjudication in *Pennoyer* v. *Neff, 95 U. S. 714,* wherein it was declared: "In a strict sense a proceeding *in rem* is one taken directly against property, and has for its object the disposition of the property without reference to the titles of individual claimants; but in a larger and more general sense the terms are applied to actions between parties where the direct object is to reach and dispose of property owned by them or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose mortgages or enforce a lien. As far as they affect property in the state, they are substantially proceedings *in rem* in the broader sense which we have mentioned."

The rule thus laid down has not been since questioned or qualified in the United States supreme court, but has been followed and elucidated in numerous cases in the state and federal jurisdictions. Exemplary of these in this state are *Amparo Mining Co.* .v. *Fidelity Trust Co., 74 N. J. Eq. 198,* and *Lister* v. *Lister, 86 N. J. Eq. 30;* while in other jurisdictions the cases to the same effect are collected and discussed in *20 R. C. L. 203.* Manifestly, the purpose and rationale underlying the distinctions thus enunciated, result from the federal constitutional provisions, which are designed to ensure compliance with the constitutional mandate requiring "due process of law," as necessary *modus operandi* to the deprivation of an existing legal right.

41

But when, as in this instance, a hearing has been accorded, and the parties have availed themselves of every recognized avenue of procedure incident to a trial upon the merits, the reason for the invocation of these constitutional differentiations in procedure, *ex necessitate* disappears. *Western Life Ind. Co.* v. *Rupp, 235 U. S. 261; 6 R. C. L. 447,* and cases cited; *12 C. J. 1193,* and cases cited.

It may also be observed that the resulting decree in a cause of this nature, under our legislation, operates, *ipso facto,* to convey the *locus in quo,* regardless of the *situs* of the parties, and their failure to comply with the mandate of the final decree. *1 Comp. Stat. tit. "Chancery"* § *45; Weehawken Ferry Co.* v. *Sisson 17 N. J. Eq. 476.*

The remaining objections to this decree are based upon the theory that both Mrs. Baumann and Cooley are innocent purchasers for value of the premises; and are therefore not bound by the covenant of Baumann in his written contract. Under our statute the filing of the contract operated as constructive notice to every one dealing with the property of the existing rights of the parties thereto. From the filing of the contract each constructively held his portion of the subject-matter of the contract as trustee for the other. Mrs. Baumann was a party to the deed to the complainant under that contract, and she was therefore charged with actual knowledge, regardless of the constructive notice imparted to her by the filing of the contract. If she were actually innocent as a purchaser, for value, the burden was upon her to establish that fact, and not remain mute when she was afforded the opportunity to speak. The same argument becomes dispositive of the claim of Cooley. In the absence of proof by either of these parties, indicating a *bona fide* purchase for value, the counter-burden of negation was not cast upon the complainant. It is only where the defendant has sustained by proof his claim as a *bona fide* purchaser for value that the burden is shifted to the complainant to establish the contrary status. Such was the effect of our determination in *Commonwealth Co.* v. *Schmit,* decided at the recent November term.

Nor is there any force in the contention that the contract lacks mutuality as between the parties to the suit. The answer

to this contention is furnished by the contract itself, which provides that the vendor would convey the *locus in quo* to the vendee, "his heirs and assigns." The assignment of the contract to the complainant, therefore, in nowise destroyed the existing status of the vendor and his assignee, as constructive trustee of the *res,* for the purpose of legally effectuating compliance with his covenant. *Saldutti* v. *Flynn, 72 N. J. Eq. 157.*

And so it is the acknowledged rule that when specific performance would be decreed between the original parties to a contract, it will be decreed between all claiming under them, if there are no intervening equities otherwise controlling the case. *Hays* v. *Hall, 4 Port. 374; Willard Eq. Jur. 269.*

Mrs. Baumann is not directly affected by this decree, since its provisions are directed entirely against Cooley, her vendee. It is finally urged that the bill will not lie, because the remedy at law is complete. The doctrine of specific performance is based upon the equitable conception that the vendee desires the land *in specie* as *sine qua non* of his contract. The contention of the defendants is based upon the fallacy involved in the argument that the suit is *in personam,* and not *in rem,* and that therefore plaintiff's redress must be at law for damages. But since we have determined the character of the action to be *in rem,* the rationale underlying the rule of equity applies that "the jurisdiction to enforce performance is universal, not because of the real nature of the land, but because damages at law, which must be calculated upon the general money value of land, may not be a complete remedy to a purchaser, to whom the land may have a peculiar and special value." *Willard Eq. Jur. 279; Madd. Ch. Pr. 288; 25 R. C. L. 202,* and cases.

The decree will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK—14.

*For reversal*—None.